## Janet D. Russell v. James V. Russell

[597 A.2d 798]

No. 89-564

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 23, 1991

*William E. Roper* of *Neuse, Smith, Roper & Venman,* Middlebury, for Plaintiff-Appellee.

*John J. Bergeron* and *Norman C. Smith* of *Bergeron, Paradis, Coombs & Fitzpatrick*, Burlington, for Defendant-Appellant.

**Morse, J.** This appeal from a divorce judgment entered eighteen months after the hearing on the merits presents such a procedural morass that a remand is necessary to reach an outcome in a manner consistent with the civil rules.

Following a divorce hearing held May 2, 1988, the trial court filed, on August 18, 1988, a document entitled, "Findings of Fact, Conclusions, and Notice of Decision." In it, the court di-

rected the husband's counsel to prepare a judgment. The decision divided the parties' net equity in marital property relatively equally and awarded the wife $300 a week in maintenance. For a pension distribution, the court stated:

> The parties shall share equally in pension pay when payment is received by [the husband]. Any pension which [the wife] may become entitled to through her employment or earnings shall be considered in any calculation or formula. [The husband] shall be required to pay or cause to be paid such portion of his pension as will enable [the wife] to have no less pension income than [the husband], including social security payments. [The husband] shall preserve [the wife's] interest so as to best accomplish equal pension payments when both are retired and living.

The parties had addressed whether the husband would provide the wife's health insurance, but the notice of decision was silent on that issue.

Although no judgment was prepared as ordered, on August 24 and August 29 the husband and the wife respectively filed V.R.C.P. 52(b) motions to amend the notice of decision. These motions were argued orally, without additional evidence, on September 13, 1988. Neither of the parties nor the court acknowledged that Rule 52(b) applies only *post judgment* ("after entry of judgment"). On November 2, 1988, the court filed a second "Notice of Decision upon Motions" amending its original notice of decision and, among other things, providing the wife with health insurance as additional maintenance. The court stated,

> The insurance shall continue not only for the three-year period requested but until she remarries, is covered by Medicaid or its equivalent, or regularly lives with another as a spouse.

On December 1, 1988, the husband submitted a proposed judgment order to the court. The wife objected to portions, and the husband responded to the objections. A conference was held to discuss the proposed final order on February 22, 1989. The day before, February 21, the wife filed a motion to "reconsider" under V.R.C.P. 60(b)(2) and 15 V.S.A. § 554. This motion alleged that the wife had quit her job due to a worsening diabetic condi-

tion and needed more maintenance. At the February 22 conference, the court scheduled the motion to reconsider for evidentiary hearing. On July 14, 1989, that hearing was held, and on September 6, 1989, the court filed a "Memorandum of Decision upon Further Hearing." The court increased maintenance from $300 to $400 a week, but temporarily increased it by $800 a month "while [the husband] has no substantial college expenses to meet for the children of the parties," to end in any event on July 1, 1993. The court also added a provision that the husband pay the wife $10,000 in trust to be applied toward the purchase of a home. On November 2, 1989, the court filed a "Final Order and Decree of Divorce."

The husband raises six issues on appeal.

## I.

The husband claims the court abused its discretion in awarding the wife permanent, rather than rehabilitative, maintenance.

The parties were married in December 1963, shortly after the wife graduated from high school, and raised four children. During the marriage, the wife was primarily a homemaker. She had some experience with home decorating and as a secretary. At the time of the first divorce hearing, the wife worked at the Medical Center Hospital of Vermont as a secretary, earning $7.50 per hour. The husband was then 51 years old, the wife 44. The court found the wife's health during the summer of 1988 to be as follows:

> She is diabetic to the extent that she suffers depression and her eyesight is diminished and she suffers blurriness at times. She is overweight. She is participating, since September 1987, in an experimental diabetic research program associated with the University of Vermont College of Medicine. She is not dependent yet on the drug insulin, but she is on a severe diet.

In contrast, at the time of the 1988 hearing, the husband was earning $82,000 a year as a manager at General Electric Company. He also was being treated for depression due to difficulties at work and the breakup of the marriage.

Although the evidence suggested that the wife desired to pursue training in a decorating career, the prospects that she

would remotely approach the husband's earning capacity were slim. Spousal maintenance is designed to correct "'vast inequality between the parties' financial positions'" resulting from divorce. *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 386 (1988) (quoting *Buttura v. Buttura*, 143 Vt. 95, 99, 493 A.2d 229, 231 (1983)). Therefore, the husband had a responsibility, within the limits of his resources,

> "to maintain the wife's standard of living as nearly as possible at the same level she enjoyed during the marriage. The husband, having entered one of the strongest and most fundamental relationships known to the law, must continue to bear its financial burden where he can reasonably do so and where it is necessary in order to prevent a relatively greater hardship to the wife."

*Id.* at 473, 555 A.2d at 387 (quoting 2 H. Clark, The Law of Domestic Relations in the United States § 17.5, at 254–55 (2d ed. 1987)). Moreover, in a long-term marriage, maintenance serves more than a rehabilitative function; it also compensates the contributions of a homemaker to the family's well-being. *Id.* at 474, 555 A.2d at 387.

15 V.S.A. § 752(a) specifically provides for permanent maintenance and does not demand any heightened standard for awarding it. Rather, § 752(b) permits the court to award maintenance "in such amounts and for such periods of time as [it] deems just," after consideration of the statutory factors. No abuse of discretion in the award of permanent maintenance has been shown. See *Klein*, 150 Vt. at 472, 555 A.2d at 386 (trial court has considerable discretion when ruling on maintenance and will be reversed only if no reasonable basis supports its order).

## II.

Next, the husband maintains that the court's decision to increase maintenance was error.

Review of this issue is complicated by the trial court's initial failure to enter judgment, instead filing a notice of decision. Nowhere in our rules is "a notice of decision," as a term of art, defined. The phrase is used in V.R.C.P. 52(a) as the event that triggers a party's deadline to request findings of fact and conclusions of law:

> In all actions tried upon the facts without a jury . . . the court shall, upon request of a party . . . made on the record or in writing within 5 days after *notice of the decision,* or may upon its own initiative, find the facts specially and state separately its conclusions of law thereon . . . .

(Emphasis added.)

Shortly after trial, the parties requested findings. Because the parties had already initiated the requirement that findings be made, they did not need to be notified that the period for requesting findings had begun to run. Instead, the court should have entered judgment as mandated by Rule 52(a). Rule 52(a) states that "judgment shall be entered pursuant to Rule 58." According to V.R.C.P. 58,

> Subject to the provisions of Rule 54(b), upon the verdict of a jury, or upon a decision by the court granting or denying relief, the clerk, unless the Presiding Judge otherwise orders, shall forthwith prepare the judgment without awaiting any direction by the court. The Presiding Judge shall promptly approve and sign the judgment, and the clerk shall thereupon enter it. A judgment is effective only when entered as provided in Rule 79(a). Entry of the judgment shall not be delayed for the taxing of costs. Attorneys shall submit forms of judgment upon direction of the Presiding Judge. A form of judgment submitted in accordance with this rule shall be served upon all opposing parties, who shall file any objections to the judgment proposed within five days of service upon them unless the Presiding Judge orders such objections to be filed earlier.

In this case, the correct procedure dictated that the husband's counsel prepare the judgment as instructed by the presiding judge. Instead, no proposed order was prepared and served until December 1, 1988, a month after the court's second notice of decision. Due to protracted legal wrangling, the judgment did not become effective until eighteen months after the final divorce hearing, though it should have been effective much earlier. In short, the court and the parties allowed what should have been a judgment entered within a reasonable time after the court's decision to become an unnecessarily protracted dispute without any apparent end in sight.

■ Absent a judgment, all motions filed after the court's first (August 18, 1988) notice of decision were not authorized by the Rules of Civil Procedure. The parties' motions to amend pursuant to V.R.C.P. 52(b), seeking, in part, clarification of the maintenance order, were made without an entry of judgment. The wife's request for modification, which came in the form of a V.R.C.P. 60(b) motion filed six months after the notice of decision, was also directed to a nonexistent judgment.

■ The court's request that the husband prepare a judgment, the parties' subsequent filing of post-judgment motions under Rules 52 and 60, and the court's reaction to those motions reflected an understanding that the first notice of decision was functionally a judgment of divorce. Under the circumstances of this case, we will treat it as such.

■ Treating the August 18th notice of decision as a final order is also consistent with our test that a judgment is final when "it makes a final disposition of the subject matter." *Nevitt v. Nevitt*, 155 Vt. 391, 396, 584 A.2d 1134, 1137 (1990). In *Nevitt*, we held an oral notice of decision was not final, and could be modified at the court's discretion, because the divorce court had made only a custody award and explicitly left all the remaining issues to a later hearing. *Id.* at 395–96, 584 A.2d at 1136–37. Here, the court's notice of decision, issued with findings of fact and conclusions of law, covered custody, child support, spousal maintenance, and property division. It made no mention of outstanding issues to be decided. The parties sought clarification of a few details, raised but not included in the order, by the appropriate post-judgment motion, a V.R.C.P. 52(b) request to amend the judgment.

■ Amendments were made to the August 18th order with the misconception that the usual standards for modifying a judgment were inapplicable. 15 V.S.A. § 554, cited by the wife, was not authority to amend or for a new trial because it too requires a judgment. Although § 554 refers to a "decree" rather than a "judgment," the two terms are virtually interchangeable. See Black's Law Dictionary 369–70 (5th ed. 1979) (decree is a judgment entered by a court of equity and serves the same purposes; with the merger of law and equity and the adoption of the Rules of Civil Procedure, "judgment" has generally re-

placed "decree"). The 1990 amendment to § 554(b) acknowledges this interpretation: "A decree of divorce shall constitute a civil judgment under the Vermont Rules of Civil Procedure."

The "Memorandum of Decision upon Further Hearing," filed September 6, 1989, also reflected the misconception that the usual standard for modifying judgments did not apply. It begins with "[e]vidence was reopened" and does not state any evidentiary standard of review except the one appropriate for the hearing on the merits. There is no recognition that the wife was seeking a modification of maintenance.

We note also that certain factual determinations in the decision are puzzling. The court found that medical necessity did not cause the wife to quit her job at Medical Center Hospital of Vermont as she had claimed and that her earning capacity of $15,000 had not changed. Yet, the court increased her maintenance anyway on the apparent ground that her financial difficulties resulted from her mismanagement of money. The court also, "[a]s further property settlement," awarded the wife $10,000 in trust to purchase a home. Property settlements are not subject to modification except pursuant to Rule 60(b).

■ The court misapprehended its authority and may have viewed the case differently had the proper procedures been followed. We, therefore, remand with directions that a final judgment of divorce be entered based on the notice of decision filed August 18, 1988. The parties may file any post-judgment motions as authorized by the Rules of Civil Procedure, and the timeliness of any motion is to be determined from the date judgment is entered.

### III.

The husband claims the court abused its discretion in awarding the wife permanent health insurance at his expense. The procedural development of this issue makes review problematic.

The wife's diabetic condition and related employment problems were explored at the merits hearing in May 1988, and in her initial request for findings she asked that the husband would "be responsible for covering [the wife] with health insurance for three years following divorce [the so-called COBRA

period] at a combined cost of $61/month." In his post-trial requests, the husband stated that he had "no objection to making whatever arrangements are necessary to allow the [wife] to continue with the G.E. [General Electric, his employer's] health insurance plan, but feels that if she prefers to be on the G.E. plan versus the Medical Center Hospital Plan [her employer's plan], she should pay the added cost of that coverage." The court's first notice of decision, however, made no provision for her health insurance.

In her August 29, 1988 motion to amend the notice of decision, the wife requested that the husband be ordered to "continue to maintain and pay for health insurance for [the wife] for the three-year period following the divorce until [the wife] obtains health insurance coverage through her own employment." This motion, along with the husband's motion to amend, was argued on September 13, 1988. The court took no new evidence. The wife merely reiterated her request that her health insurance be covered "during the eligible three year period" and that the husband be responsible for the cost. The husband stated he would "make sure that she can stay on the plan if she chooses" but argued that she should pay the $60 per month out of her maintenance. The court asked if the wife would be eligible to remain on his health insurance, and he responded, "Yes, . . . for up to thirty-six months after the divorce is granted." This was the entire substance of the discussion on this issue. Subsequently, in its second notice of decision, filed November 2, 1988, the court ordered:

> The insurance shall continue not only for the three-year period requested but until she remarries, is covered by Medicaid or its equivalent, or regularly lives with another as a spouse.

Neither party filed a motion objecting to this provision, but the matter did not end there. In December 1988, the husband submitted the proposed final order, incorporating this provision. On December 12, 1988, the wife filed objections to the proposed order, asking that the husband be instructed to provide health coverage for her even if he left his employment at General Electric. On February 22, 1989, the court held a status conference, and the health insurance problem—whether the wife could continue on GE's plan after three years and what the cost

of such continued coverage would be—was raised for the first time. At the end of the discussion, the husband asked for an opportunity to discuss the matter further with the GE health insurance administrator and present the information at another hearing (on the wife's motion to reconsider maintenance). The court responded that "This [the health insurance issue] is a function of maintenance, so we ought to reconsider this." At the July 1989 hearing, the husband testified that coverage could be provided and the cost during the COBRA period would be $98 per month. He also stated that although the cost for continued coverage was unknown, he would agree to a $100 per month cap on health insurance coverage for the wife. In the final divorce order, the court ordered the husband "to provide on an uninterrupted basis health insurance, as additional maintenance, for [the wife] equal to that now provided through his General Electric employment, until such time as [the wife] remarries or is covered by Medicaid, or its equivalent, or regularly lives with a spouse."

The husband asserts that the court did not have any evidence of the cost for health insurance beyond the three-year period. He argues that, when the cost of maintenance in the form of health insurance is unknown or cannot be determined, the maintenance award cannot be made.

Despite—indeed because of—the court's protracted treatment of this issue, we must remand. The trial court's manner of dealing with this issue illustrates why it is important to adhere to the procedural rules involving the rendering and amendment of judgments. To proceed without the mandated judgment order is to journey without a compass. First, in light of the procedural shortcomings already noted, we cannot simply review the end result, because we do not know how the court got there. Because we treat the court's first notice of decision as the final judgment, we could evaluate the wife's motion to amend that judgment as timely filed under V.R.C.P. 52(b) and V.R.C.P. 6(a), and evaluate the husband's argument as of that stage of the proceeding. But, the court did not treat the wife's motion that way. It treated everything before the final divorce order as interlocutory, issuing three notices of decision, beginning with general statements and then making increasingly more specific orders, sometimes without any notice to the parties of what was

coming. Everyone—the court, the lawyers, and the litigants—seemed to be operating under the assumption that the court's ruling on the motion to amend would have no more finality than any other interlocutory ruling, an assumption borne out by the subsequent proceedings.

The court treated health insurance as part of maintenance, and this issue must be addressed along with the other maintenance issues on remand in the context of post-judgment motions.

## IV.

The husband claims the court used an erroneous so-called coverture fraction in calculating the proportion of his pension to go to the wife. The coverture fraction was first used in the September 1989 "Memorandum of Decision upon Further Hearing" in modifying the pension provision in the August 1988 notice of decision. It is, therefore, not part of the final judgment as we have defined it. Because the issue will likely recur on remand, we address it now.

■ The parties agreed to distribute between them the husband's pension when it became due. In determining the shares, the court must apply a coverture fraction to reflect the proportion of the entire pension attributable to the marriage. *McDermott v. McDermott*, 150 Vt. 258, 261, 552 A.2d 786, 789 (1988). As stated in that case, "[t]he numerator of the fraction is the number of months or years that the employee participated in the plan during the marriage." *Id.* at 261, 552 A.2d at 789. The parties disagree upon what date the marriage should be deemed to have ended. The husband urges us to use the date of separation to measure the cutoff. Because the parties were married in December 1963 and separated in December 1986, the husband suggests 23 years is the proper numerator. The court used 25 years, reflecting a cutoff date after the first but before the second evidentiary hearing.

■ Courts of other jurisdictions use the date of separation in calculating the coverture fraction. *Huddleson v. Huddleson*, 187 Cal. App. 3d 1564, 1571, 232 Cal. Rptr. 722, 726 (1986); *King v. King*, 332 Pa. Super. 526, 534, 481 A.2d 913, 917 (1984). We think that date is most reflective of the functional end of marriage and will be a relatively easy benchmark to determine.

## V.

A final point is raised about the interpretation of a provision included in the November 1989 final divorce order, which reads:

> [M]aintenance obligations shall terminate . . . when [the wife] is receiving or eligible for both [the husband's] retirement benefits and social security benefits.

The husband points out that this provision may be read to say that the wife will someday be eligible for some of the husband's social security benefits. The basis for the reference to social security in this provision is unclear, because it is not apparent how the wife will be eligible, if at all, for the husband's social security benefits. If this or a similar provision is included in an order on remand, it should be clarified.

## VI.

The husband's objection to the requirement that he post a bond to compensate the wife for any adverse income tax treatment for failure to reinvest her share of the proceeds from the sale of the parties' residence is moot because he did not post the bond and the wife never pursued the point by moving for relief in the trial court.

*Reversed and remanded.*