# Janis Hayden v. Rex Hayden

[838 A.2d 59]

No. 02-235

Present: Amestoy, C.J., Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned

Opinion Filed October 10, 2003[1]

---

[1] This appeal was originally argued in January 2003, and then resubmitted on briefs in September 2003 following the recusal of Justice Dooley from the case.

*Susan M. Murray* and *Abby C. Moskovitz* of *Langrock Sperry & Wool, LLP*, Middlebury, for Plaintiff-Appellant.

*Rex Hayden*, Pro Se, Newmarket, Alabama, Defendant-Appellee.

¶ 1. **Johnson, J.** Plaintiff Janis Hayden appeals from an order of the Addison Family Court ordering defendant Rex Hayden to pay plaintiff $1000 per month in spousal maintenance and dividing the parties' marital property between them. Plaintiff contends that the maintenance award is insufficient to meet her reasonable needs and that the property division is inequitable. She argues that the family court erred: (1) in valuing defendant's 401(k) plan on the date the parties separated instead of on the date of the final hearing in this matter; (2) in excluding funds contributed to defendant's IRA before his marriage when valuing the IRA for purposes of property division; (3) in considering a "hypothetical" real estate commission on a potential sale of the marital home in determining defendant's rightful share of the parties' property; (4) in failing to divide the parties' assets on an "essentially equal" basis even though it had expressed an intent to do so; and (5) in ordering a maintenance award that subordinated plaintiff's need for spousal maintenance to defendant's desire to avoid bankruptcy. We reverse.

¶ 2. The parties were married in 1985, and separated in 2000. Defendant is a mechanical engineer currently earning $81,000 per year. Plaintiff has an associate's degree in health information technology and has worked sporadically in various administrative assistant jobs, but at the time of the final hearing she held no steady employment. Plaintiff's ability to work was a contested issue at the final hearing. Due to various health problems, her doctor testified that she would have difficulty in an employment situation requiring prolonged concentration or physical activity. Nevertheless, the trial court found that she could successfully handle part-time employment.

¶ 3. The parties' marriage produced one child, a daughter who was four-and-one-half years old at the time of the final hearing in this case. Plaintiff has custody of the child, and defendant has visitation rights. The court found that "[c]ustody of the child is not a bar to the wife's working. The child is presently in full-time daycare .... The mother testified the full-time daycare is 'for her good and mine.'" Thus the trial court determined that despite its finding that plaintiff suffers from sleep apnea, degenerative arthritis, depression, and reflux/hiatal hernia, and given that her daughter was in day care, plaintiff should be able to work part-time.

¶ 4. The parties have come to an agreement regarding parental rights and responsibilities and related issues; thus, the only outstanding issues on appeal are property valuation, property division, and spousal maintenance. The existence of almost $70,000 in credit card debt, held separately by the parties, complicates the situation. Defendant holds slightly more debt than plaintiff, but both face significant minimum monthly payments.

¶ 5. The court awarded defendant an IRA, a 401(k) retirement account, a truck, the marital home, and tools and equipment, which the trial court valued at $82,000, while awarding plaintiff two IRAs, a car, and a trailer with a total value of $78,000. In its conclusions, the court stated that the "[a]ssets of the parties should be divided equally," and the decision noted that the distribution made by the court was "essentially equal." The trial court did not state explicitly how it valued the retirement accounts awarded to defendant. The parties disagreed over the appropriate valuations for these two accounts, each proposing different values based on different assumptions about the extent to which the accounts were marital property. Both parties agree, however, that the court accepted defendant's suggested assessment, valuing the 401(k) account at the date of separation and excluding money contributed to the IRA by defendant prior to the parties' marriage. As a result, the value attributed to the accounts by the trial court was $31,246 less than the total amount of money in the accounts on the day of the final hearing. Considering the retirement accounts awarded to defendant to be worth their value on the day of the final hearing, the court awarded defendant assets worth $113,000, and awarded plaintiff assets worth $78,000. This means that defendant received 59% of the assets, and plaintiff received 41% of the assets.

¶ 6. The court also awarded plaintiff spousal maintenance in the amount of $1000 per month. The trial court stated that the maintenance award was intended to comply with this Court's holding that spousal maintenance is intended to correct the vast inequality of income resulting from the divorce, *Russell v. Russell*, 157 Vt. 295, 299, 597 A.2d 798, 800 (1991), and should be awarded to equalize the standard of living of the parties "for an appropriate period of time." *Downs v. Downs*, 159 Vt. 467, 469, 621 A.2d 229, 230 (1993). The court found that based on the monthly budget presented by defendant detailing expenses of $5,548 per month, defendant could afford to pay $1000 in maintenance while still making $770 monthly minimum credit card payments. Plaintiff had submitted monthly expenses of $6,935, but this included $4,185 in credit card debt

that the trial court found plaintiff would be unable to repay.[2] Excluding credit card payments, plaintiff's actual monthly expenses total $2,757. The court's maintenance award of $1000 per month, when added to the $771 per month she receives in child support payments, leaves plaintiff with a monthly shortfall of $986. The trial court concluded that plaintiff "will be able to meet her reasonable needs if she pursues even part-time employment."

## A.

¶ 7. Plaintiff first contends that the court erroneously treated a significant portion of the funds contained in retirement accounts awarded to defendant as nonmarital property. The trial court valued defendant's 401(k) retirement account on the date the parties separated in March 2000 rather than on the date of the final hearing in January 2002, thus attributing $13,568 less to the account than the amount of money it actually contained on the date of the final hearing. Similarly, the trial court undervalued defendant's IRA account by attributing a value to the account that excluded the amount that defendant had accrued in this account prior to the parties' marriage. Defendant's submissions to the trial court describe the value for the account used by the trial court as the IRA's "marital value." The so-called marital value of the IRA was $17,678 less than the monetary value of the account on the date of the final hearing.

¶ 8. The court erred when it failed to consider the entire monetary value of the retirement accounts at the time of the final hearing as assets to be distributed between the parties. Under Vermont law, "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court." 15 V.S.A. § 751(a); *Wall v. Moore*, 167 Vt. 580, 581, 704 A.2d 775, 777 (1997) (mem.). Assets are valued for distribution purposes as of the date of the final hearing, regardless of whether acquired before or after the marriage. See *Camisa v. Camisa*, 168 Vt. 563, 565, 714 A.2d 641, 644 (1998) (mem.) (after remand, court required to rely on the current value of an asset rather than its value at the time of the first hearing); *Milligan v. Milligan*, 158 Vt. 436, 440, 613 A.2d 1281, 1284 (1992) ("The trial court has power to distribute marital assets, including bank accounts and securities, in

---

[2] On appeal plaintiff does not argue that she would in fact be able to make the credit card payments in her name, apparently conceding that these debts would never be repaid. She argues, however, that the trial court erred in awarding her maintenance that did not meet her monthly expenses while her husband was left with sufficient monthly income to pay off the credit card debt that exists in his name.

whatever manner it finds just and equitable, regardless of the prior owner.") (internal quotations omitted); *Cleverly v. Cleverly*, 151 Vt. 351, 354-55, 561 A.2d 99, 101 (1989) ("It is an abuse of discretion for the trial court to premise its division of marital property on outdated valuations of the assets involved.").

¶ 9. While the trial court opinion contains no discussion that could assist this Court in meaningful review, defendant proposes two legal bases for the trial court's order. First, defendant cites the provision of 15 V.S.A. § 751 that allows the trial court, in making a property settlement, to consider "the party through whom the property was acquired." 15 V.S.A. § 751(b)(10). Ample precedent establishes the trial court's authority to restore property to the partner who brought the property to the marriage. See, e.g., *Myott v. Myott*, 149 Vt. 573, 578-79, 547 A.2d 1336, 1340 (1988) (approving trial court's award of plaintiff's vested pension benefits to plaintiff while other assets were divided equally between the parties); *Klein v. Klein*, 150 Vt. 466, 469, 555 A.2d 382, 384 (1988) (approving award that takes into account that a "substantial share of the assets came from plaintiff's inheritance from his father"). The trial court is still, however, required to consider the property as part of the marital estate and to explain the basis for its disposition, which did not occur here. See *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1162 (1986) (requiring the trial court to consider husband's undistributed share of his mother's estate in formulating appropriate property settlement, as "[u]nder 15 V.S.A. § 751 the trial court was required to settle the rights of the parties to all of their property"); *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985) (emphasizing that court's findings that are the basis for a property settlement must always "provide a clear statement as to what was decided and why").

¶ 10. Defendant's second justification for the trial court's valuation of the two retirement accounts is based on *Russell v. Russell*, 157 Vt. at 305, 597 A.2d at 804. In *Russell*, we held that the date of separation of the parties should be used for the purpose of determining what proportion of a pension should be subject to the claims of an employee's former spouse, because the date of separation "is most reflective of the functional end of marriage and will be a relatively easy benchmark to determine." *Id.* The parties in *Russell* had agreed to distribute the husband's pension between them when it came due, rather than to assign a monetary value to the pension at the time of the final hearing and subject this value to equitable distribution. *Id.*

¶ 11. As we explained in *Russell*, when a court apportions a pension between parties to a divorce, it "must apply a coverture fraction to reflect

the proportion of the entire pension attributable to the marriage." *Id.* The coverture fraction reflects the proportion of the entire pension attributable to the marriage. *Id.*; *McDermott v. McDermott*, 150 Vt. 258, 261, 552 A.2d 786, 789 (1988). The numerator of the coverture fraction represents the amount of time that the employee participated in the plan during the marriage. *McDermott*, 150 Vt. at 261, 552 A.2d at 789.

¶ 12. *Russell* deals with the narrow question of how a court can ensure proportional benefit of a former spouse in a pension that is only partially attributable to a marriage. This case presents a different fact pattern; the trial court based its award upon the value of the retirement accounts in question on a specific date rather than the value of the pension when it became due. In *McDermott*, another case involving distribution of pension funds and the application of the coverture fraction, the trial court distributed the entire present value of a pension without taking into account that only a proportion of the total value of the pension was subject to distribution because part of the pension's projected value reflected plaintiff's future earnings rather than earnings during the course of the marriage. We reversed and remanded for determination of a coverture fraction and the percentage of the value of the account that was attributable to the marriage. *Id. McDermott* requires a trial court to provide for equitable distribution of only that portion of a pension that is attributable to the marriage, but does not require the trial court to use a particular cut-off date in calculating the coverture fraction. *Id.*

¶ 13. Similarly, *Russell* does not establish a hard and fast rule regarding the date on which a coverture fraction should be based, but it does lay out the principles that should guide a court's decision. See *Russell*, 157 Vt. at 305, 597 A.2d at 804. In *Camisa*, we affirmed a trial court's decision to determine the coverture fraction based on the date of the initial divorce decree. *Camisa*, 168 Vt. at 564, 714 A.2d at 642. The trial court based this determination on the principle that the coverture fraction should "reflect the number of years in which both parties contributed to the growth of the pension." *Id.* Under the circumstances, the trial court considered the date of the initial divorce decree rather than the date of separation an appropriate benchmark. *Id.* As *Camisa* illustrates, this Court will defer to the trial court's exercise of discretion in apportioning pensions between parties to a divorce as long as the trial court has supported its decision with adequate factual findings and reasoning to support its determination.

¶ 14. In this case, the trial court's failure to provide reasoned findings supporting its valuation of the two accounts calls its disposition into question. "[W]e will uphold the court's valuation conclusions as long as

they are supported by adequate findings, which are in turn supported by sufficient evidence in the record." *Kanaan v. Kanaan,* 163 Vt. 402, 405, 659 A.2d 128, 131 (1995). This decision was not based upon adequate findings. The decision contains no discussion of *Russell* or any other basis for the exercise of discretion. The trial court in this case simply excluded from its property disposition money that existed in retirement accounts awarded to defendant on the date of the final divorce hearing, in effect granting this money outright to defendant with no discussion of the basis for this disposition. As plaintiff argues, one reason that this was error is that a part of the increase in the value of defendant's 401(k) from the date of separation to the date of the final hearing resulted not merely from his contributions, but from market appreciation. Even if the trial court intended to apply the *Russell* rule and divide only those pension funds that were accumulated during the period of the marriage, there can be no question that the appreciation on funds contributed to the account during the period of the marriage should have been subject to such division between the parties to the marriage. In fact, such appreciation on the funds would have been incorporated into the award if the trial court had calculated the coverture fraction to use to determine what portion of the account was marital property. The effect of such a calculation would have been to illustrate that defendant received a larger property settlement than it appears he received based on the trial court's undervaluation of the accounts awarded to defendant, and that the division of property did not meet the trial court's goal of an "equal" distribution.

¶ 15. Section 751 of Title 15 V.S.A. requires that the trial court explain its rationale for awarding funds placed in a retirement account before the marriage and following separation to the employee spouse rather than dividing these funds equally. The trial court's decision contains no discussion of the factors that § 751 requires the court to consider in formulating a property settlement. On remand, the trial court must consider the factors laid out in 15 V.S.A. § 751(b) in making an equitable property settlement. Two factors are relevant to the treatment of money accumulated in a retirement account before or after the pendency of a marriage. First, in formulating an equitable property division, the trial court is to consider the party through whom the property was acquired. 15 V.S.A. § 751(b)(10). Second, the trial court is to consider "the contribution of each spouse in the acquisition, preservation, and depreciation or appreciation in value of the respective estates." *Id.* § 751(b)(11). While these factors may favor defendant's position that he was entitled to keep the money in the accounts, other factors delineated in § 751(b) lend support to plaintiff's claim that she should be entitled to a

more generous proportion of the available assets. Notably, the trial court is required to consider the age and health of the parties and their respective vocational skills and employability. 15 V.S.A. § 751(b)(2), (3). Furthermore, findings regarding the source of the funds that husband contributed to his 401(k) account during the period between separation and divorce, and particularly the extent to which such contributions could otherwise have been used to offset the expenses being incurred by the parties (both of whom managed to accumulate substantial credit card debt during the period in question) would assist in review of whether awarding these funds to defendant outright was consistent with the statutory mandate of formulating an equitable distribution of assets.

B.

¶ 16. Plaintiff next contends that the trial court erred in considering a hypothetical real estate commission on the marital home as one justification for the $4,000 discrepancy between the property awards according to which defendant received more than plaintiff. Although according to the trial court's own valuations plaintiff's total property award amounted to $78,000, while defendant's came to $82,000, the trial court observed that the deduction of a six percent real estate commission for the future sale of the marital home rendered these awards "essentially equal." Potential costs such as taxes or commissions cannot affect the valuation of a marital asset. See *Johnson v. Johnson*, 158 Vt. 160, 165, 605 A.2d 857, 860 (1992). Yet, the trial court has the discretion to consider such costs in establishing the amount and method of payment of any monetary award. *Id.* See also *Cabot v. Cabot*, 166 Vt. 485, 496, 697 A.2d 644, 651 (1997) (affirming the trial court's consideration of potential tax liability on an investment account in dividing marital property). In this case, the court considered the implications of a hypothetical real estate commission on the overall difference between the property awards but did not deduct the real estate commission from its valuation of the marital home. We find no abuse of discretion in the trial court's consideration of the commission.

C.

¶ 17. In light of our reversal for redetermination of the property division, we do not reach plaintiff's remaining claims on appeal that the trial court failed to divide the parties' assets on an "essentially equal" basis and that the maintenance award of $1000 per month subordinated plaintiff's reasonable needs to defendant's desire to avoid bankruptcy. In awarding maintenance, the trial court is required to consider the prop-

erty division between the parties pursuant to 15 V.S.A. § 752(a)(1) and (b)(1). *Cleverly v. Cleverly*, 151 Vt. at 357, 561 A.2d at 102-03. Changes in the property division therefore require reconsideration of the maintenance award as well. *Id.*; *Johnson*, 158 Vt. at 165, 605 A.2d at 860.

*Reversed and remanded.*

2003 VT 87A