2014 VT 45

## Susan A. Cook v. David A. Coburn

[97 A.3d 892]

No. 13-057

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed May 2, 2014

*John J. Welch, Jr.*, Rutland, for Plaintiff-Appellee.

*Kristina L. Pollard*, Rutland, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Husband appeals from the trial court's final divorce order. He argues that the court erred by including certain items as part of the marital estate, awarding wife a disproportionate share of the marital estate, and failing to award him maintenance. We reverse and remand for additional proceedings.

¶ 2. The parties married in December 1997 and separated in March 2010. They have a daughter who was born in July 1999. In January 2013, following a six-day hearing, the court issued its final divorce order. It found as follows: Wife is forty-eight,

husband is fifty-five. The parties met in 1996 when wife hired husband to build a ten-stall addition onto her barn. Wife had started a horse stabling and training business several years earlier known as Horse Amour. Husband later moved in with wife. The Horse Amour property was valued at $260,000 in 2010.

¶ 3. Husband has been a dairy farmer, farrier, and builder all of his adult life. He ran his family's dairy business through the 1980s. In 2010, husband's mother deeded the 162-acre family farm (referred to as the Danby property) to husband, retaining a life estate as well as the power to sell or mortgage the property during her lifetime. The Danby property was appraised at $515,000 without considering husband's mother's reserved rights, and at $425,000, considering the reservation of rights. The court found the appraiser's opinion credible and reliable, and it valued the property at $425,000. Husband also owned a third of an acre adjacent to the farm, valued at $15,000.

¶ 4. The parties disputed the valuation and distribution of a business known as Bit Wipes. The court found that both parties had the idea for Bit Wipes, both were instrumental in the creation and design of the product, and both contributed substantially to the eventual design and marketing of the final product. The parties made a small profit on the business each year. The parties presented no expert evidence, however, as to the value of this business. For various reasons, the court set $40,000 as the business's fair market value. The court noted that husband had requested payment for his interest in Bit Wipes in the form of spousal support. The court found no support for this approach in fact or in law. It explained that Bit Wipes, like the rest of the marital estate, needed to be analyzed as marital property in accordance with 15 V.S.A. § 751.

¶ 5. The court found that the parties had other sources of income during the marriage. Wife taught riding lessons, and held camps, shows, and other events. Husband assisted by doing chores, setting up events, and doing general repairs and upkeep around the farm. The court found it clear from the evidence that Horse Amour was a very labor intensive business, and that the amount of revenue generated from all sources was directly related to the hours of labor devoted to the various enterprises. The parties were able to earn more revenue as a couple than they could earn separately.

¶ 6. The court also analyzed the parties' current employment and living situations. It found that husband worked part-time as a bus driver, and that he did some farrier work. Husband lived with his mother and paid for groceries and other bills as he was able. The court found that wife continued boarding horses, giving riding lessons, and having camps and similar events, in addition to running the Bit Wipes business. Wife never had less than $62,000 in gross revenue. The court found that wife could earn a good living.

¶ 7. Considering the statutory factors, the court concluded that the net marital estate should be essentially equally divided. It awarded wife the Horse Amour property and an adjacent lot, the Bit Wipes business, as well as various other items of personal property. The court awarded husband the Danby property and the adjacent lot, as well as other items of personal property. The court calculated the value of wife's award at $435,700 and husband's at $452,400. The court declined to order spousal support. Husband appealed from the court's order.

¶ 8. ■ Husband first argues that the trial court erred in awarding wife a 2004 GMC truck that belongs to husband's adult son. He points to his uncontested trial testimony that his son purchased this truck with his own money. Wife concedes that the court erred in awarding her this truck. Because this asset does not belong to either husband or wife, the court erred in treating it as marital property. See 15 V.S.A. § 751(a) (stating that court has jurisdiction over all property owned by either or both parties to a divorce). We therefore strike this portion of the court's award. See *Billings v. Billings*, 2011 VT 116, ¶ 11, 190 Vt. 487, 35 A.3d 1030 (stating that trial court's findings will stand on appeal unless clearly erroneous, and conclusions will stand if supported by findings).

¶ 9. Husband next argues that the court erred by including the Danby property as part of the marital estate. He maintains that, given the terms of his warranty deed, he holds a mere expectancy interest similar to a beneficiary under a will or revocable trust. Husband complains that the court failed to appreciate this fact. Assuming that the Danby property is excluded as marital property, husband maintains that wife received a disproportionate share of the marital estate.

¶ 10. The trial court has wide discretion in distributing marital property, and we will not disturb the court's decision "[u]nless the

court's discretion was abused, withheld or exercised on untenable grounds or to a clearly unreasonable extent." *Lalumiere v. Lalumiere*, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988) (quotation omitted).

¶ 11. The court abused its discretion here. As noted above, the court has jurisdiction over all property owned by either or both parties to a divorce. 15 V.S.A. § 751(a). We held in *Billings v. Billings* that any interest that a husband held as a beneficiary under a will or revocable trust was not marital property to be distributed by the court if the testator or settlor was still alive. 2011 VT 116, ¶ 18. This is because the husband's interest was a mere "expectancy." *Id.* (citing *Krause v. Krause*, 387 A.2d 548, 550 (Conn. 1978) (defining expectancy as "the bare hope of succession to the property of another, such as may be entertained by an heir apparent," and providing that "[s]uch a hope is inchoate," and "has no attribute of property" (additional quotation omitted))). We found no reason to distinguish between revocable trusts and wills. *Id.* ¶ 19 (citing Restatement (Third) of Trusts § 25 cmt. a (2003) (stating that with respect to both revocable trusts and wills, "the testator and the settlor have retained their complete control over the property that is subject to the will or trust instrument")).

¶ 12. ■ We noted, however, that such beneficial interest could be considered in arriving at an equitable distribution of marital property under 15 V.S.A. § 751(b)(8). *Billings*, 2011 VT 116, ¶ 23. That provision allows the court to consider each party's "opportunity . . . for future acquisition of capital assets and income," and the statute does not "distinguish between different opportunities based on the means by which the opportunity is created."[1] *Id.* ¶¶ 20, 23. We emphasized that "because a property distribution cannot be modified where a change of circumstances occurs, it is necessary to have a grasp of predicted future circumstances to bring about a fair result." *Id.* ¶ 23. We explained that the trial court must evaluate whether future receipt of a benefit is likely, mindful that bequests from relatives make the likelihood of receipt stronger. *Id.* ¶ 24.

---

[1] We note that the statute has been amended since the date of the trial court's final order. We apply the statute in effect at the time of the trial court's decision below, but we note that application of the new statute would not appear to change the result.

¶ 13. ██ ██ Like the interests involved in *Billings*, husband's interest in the Danby property is inchoate and therefore it cannot be distributed as marital property. While husband's mother purported to convey the Danby property to husband via warranty deed, the deed stated that it was subject to "Schedule A," in which husband's mother retained a life estate and the power to sell or mortgage the property during her lifetime.[2] Husband's mother retains full control over the property during her lifetime, and she has not actually conveyed anything to husband. See generally *Univ. of Vt. v. Wilbur's Estate*, 105 Vt. 147, 155, 163 A. 572, 575 (1933) ("The law is well settled that to constitute a valid gift *inter vivos* there must be an intention on the part of the donor to transfer the title to the property to the donee immediately and irrevocably, accompanied by such delivery as will place the donee in complete possession and control of the same."). Husband has no legally enforceable right to receive this property. See 2 B. Turner, Equitable Division of Property § 6:91, at 476 (3d ed. 2005) (recognizing that courts generally hold that mere possibility of future inheritance or gift does not constitute divisible property, and explaining that lack of a legally enforceable right to receive property distinguishes future inheritances and gifts from other contingent assets such as unvested pensions, where owning spouse has a presently existing legal right). Husband has a mere expectancy of acquiring the Danby property; he is an "heir apparent."

¶ 14. That does not mean, however, that husband's expectancy interest is irrelevant in the distribution of the marital estate. As in *Billings*, this interest can be considered with respect to husband's opportunity to acquire future assets and income. There is evidence in the record from which the court can evaluate the likelihood that husband will acquire this property upon his mother's death. Evidence was also presented as to the value of this property. To the extent that the court finds it warranted, the court can also take additional evidence on this issue.

¶ 15. ██ We thus reverse and remand the court's decision to allow it to consider the Danby property under the appropriate

---

[2] This type of deed is apparently referred to as a "Lady Bird" deed, an "enhanced life estate" deed, or a "transfer-on-death" deed. Such deeds "only convey a future interest" and are "designed to avoid probate, as well as creditors." *In the Matter of the Estate of Dolores Ann Davis*, 18 Quinnipiac Prob. L.J. 247, 249 (2005). No party challenges the validity of the deed in this case.

statutory provision, although we recognize that consideration under § 751(b)(8) does not mean that the distribution of marital property will necessarily change as a result. See *Billings*, 2011 VT 116, ¶ 24 (making similar observation). Because the court will be reconsidering its property award, it may also consider on remand if maintenance is warranted. See *id.* ¶ 26 (recognizing that property division and maintenance decisions are interrelated, and concluding that reconsideration of property distribution warranted reconsideration of maintenance decision). Given that the case will be remanded, we do not reach husband's final argument that the court's distribution of marital property unfairly favors wife.

*Reversed and remanded.*