EATON, J.
¶ 1. In this divorce action, wife challenges the superior court's property distribution, including its award of property in lieu of spousal maintenance. We affirm in part and reverse in part.
¶ 2. The parties began a romantic relationship in 2002 when they were both married and had children. Their respective divorces were finalized in the spring of 2004, and they began living together that summer. They married in June 2007 and separated in February 2014. No children were born of the marriage, which was the second for both parties.
¶ 3. Wife brought into the marriage assets totaling approximately $1.8 million, *857 most of which she obtained through her divorce from her first husband. Husband brought into the marriage between $4.4 and $5.4 million in assets, which he accumulated through his work in the financial services industry from 1985 to 2000. In 2004, following their divorces from their former spouses, the parties jointly and equally purchased as tenants in common a $1.85 million home in Connecticut, subject to a $1.3-million mortgage, and a $685,000 condominium in Stratton, Vermont, subject to a $500,000 mortgage. During this period, the parties were unemployed or underemployed, living off husband's assets and the support wife was receiving from her first husband.
¶ 4. In May 2006, the parties jointly and equally purchased as tenants in common a home in Winhall, Vermont for $2 million, subject to a $650,000 mortgage. At the time, husband was working as a consultant to a hedge fund. In February 2008, after a Connecticut court granted wife permission to relocate to Vermont with her two minor children, the parties sold their Connecticut home and moved into the Winhall home.
¶ 5. To preserve wife's spousal support from her first husband, the parties initially kept their finances separate. They did not open their first joint bank account until early 2008, six months after they married. In November 2009, the parties sold their Stratton condominium.
¶ 6. In 2011, husband returned to work full time in the financial services industry, as a fund manager for a Japanese company for a base salary of $480,000. The job required husband to work in New York City during the week. In the spring of 2013, husband began working for Citibank, which compensated him with substantial deferred stock and cash in addition to a base salary of $400,000. Husband's job required him to work in Houston four days a week, but he continued to spend weekends in Vermont.
¶ 7. The parties separated in February 2014, and wife filed for divorce in April of that year. A divorce hearing was held over fourteen days between March 2015 and January 2016. On the last day of the hearing, husband was fifty-seven years old and in good health. Wife was fifty-one years old and in good health. She is a certified paramedic and has a Bachelor's Degree in General Studies. She intended to enroll in a two-year physician's assistant program in the fall of 2017, after which she hoped to earn a six-figure salary.
¶ 8. The superior court issued a twenty-eight-page final decision and divorce order in October 2016. After examining each of the property distribution factors set forth in 15 V.S.A. § 751(b), the court concluded that it would be inequitable to simply apportion the marital estate by the percentage each party brought into the marriage, even though the marriage was relatively brief. The court found the marital estate to consist of $5,632,221 in total assets and $569,968 in total debts. In considering how to distribute the property, the court found that: (1) husband brought substantially more assets into the marriage; (2) he was more likely to maintain employment that would compensate him at a level consistent with the parties' lifestyle during the marriage; (3) wife made significant contributions to the household, but husband contributed to a greater degree to the maintenance and/or increase in the value of the marital estate; and (4) wife had not been gainfully employed through much of the parties' relationship. The court awarded the Winhall home to husband, but allowed wife to remain in the home until her daughter graduated from high school. To compensate wife for her share of the parties' real property, the court ordered husband to pay wife $1.1625 million by June *858 2018 or six months after the conclusion of the case, whichever came later. The court also divided the parties' substantial personal property.
¶ 9. As for spousal maintenance, the court concluded that it was appropriate and preferable to award wife additional property in lieu of maintenance, considering "the substantial size of the marital estate, the acrimonious state of the parties' relationship, and the brief duration of the marriage." After examining the statutory maintenance conditions and factors set forth in 15 V.S.A. § 752, the court awarded wife an additional cash transfer of $970,000 to ensure that wife would be financially independent. The court stated that the award was both part of an equitable property distribution and, above and beyond that, additional property in lieu of maintenance. The court did not specify what part of the award was property division and what part was property in lieu of maintenance.
¶ 10. The parties filed motions to amend or clarify the superior court's final divorce order, including its treatment of husband's deferred compensation from Citibank and its property award in lieu of maintenance. In response to the motions, the court amended some of its findings and conclusions concerning the deferred compensation and clarified that the $970,000 awarded to wife was intended partly as an offset to a particular bank account awarded to husband and partly as additional property in lieu of a spousal maintenance award. But again, the court did not specify what part was property division and what part was property in lieu of maintenance.
¶ 11. On appeal, wife argues that: (1) the court erred in failing to consider the length of the parties' premarital relationship and cohabitation in establishing its property distribution and maintenance award; (2) by awarding her an undifferentiated lump-sum payment that was partially property settlement and partially a maintenance award, the superior court failed to explain how its division of marital assets was equitable and whether the unspecified maintenance award would enable her to continue the lifestyle established during the marriage; and (3) the court made multiple errors in valuing the marital estate.
I.
¶ 12. We first address wife's contention that the superior court committed reversible error by not considering the parties' premarital relationship and cohabitation in determining the length of the marriage. According to wife, the court failed to take into account that the parties bought multiple properties together and began sharing a home with wife's minor children in 2004, three years before they married. In her view, given the nature of the parties' ties and the length of their premarital relationship, the court should have counted those years in determining the length of the marriage and how that factored into an equitable property distribution and a just maintenance award.
¶ 13. The duration of the marriage is one of the factors to be considered in determining not only an equitable property distribution but also the amount and duration of any maintenance award. See 15 V.S.A. § 751(b)(1) ; id. § 752(b)(4). The superior court has broad discretion in considering each of the statutory factors, including how to calculate the length of the marriage under the circumstances of the case. Wall v. Moore, 167 Vt. 580, 581, 704 A.2d 775, 777 (1997) (mem.). In Wall, the parties were married for only the last four years of a fifteen-year relationship in which the wife provided most of the couple's financial support during the years before they married. We held that the *859 family court did not abuse its discretion by considering the entire length of the parties' relationship in dividing their property, given the court's conclusion that "it would be unfair to consider only the four years in which the couple was legally married for purposes of asset distribution." Id.
¶ 14. Here, the parties began living together in August 2004, they married in June 2007, and they separated in February 2014, two months before wife filed for divorce. The superior court did "not find the parties' pre-marriage lifestyle to be particularly relevant to [its] decision," noting that "[d]uring this time, the parties were unemployed or underemployed, living off [husband's] assets ... and ... support [wife] received from her ex-husband." The court also found that "the parties had initially kept their finances separate" to maintain wife's spousal support from her first husband, noting that the parties equally contributed to their real estate purchases and did not open their first joint bank account until early 2008, after they were married. Moreover, wife testified that she was not financially dependent on husband at any time during their cohabitation period before they married, and that she paid the majority of her children's expenses during that time. Given the facts and circumstances of this case, the superior court acted within its discretion in not including the parties' premarital relationship and cohabitation period in calculating the duration of the marriage as a factor in determining an equitable property distribution and just maintenance award.
II.
¶ 15. Next, we consider wife's challenge to the superior court's explanation of its award of property in lieu of spousal maintenance. Wife asserts that the superior court's undifferentiated $970,000 lump-sum payment leaves this Court to speculate about the fairness of the property division and the sufficiency of the maintenance award and that the court failed to make sufficient findings on her reasonable needs going forward or on husband's post-separation income. She contends that in awarding her a lump-sum that was part equitable property distribution and part additional property in lieu of maintenance, the court improperly conflated the two without sufficient findings as to what portion of the award was intended as property in lieu of maintenance over and above an equitable property distribution. In making this argument, she relies primarily on Jenike v. Jenike, wherein we stated that the family court should divide the marital property equitably before considering whether the parties' financial circumstances warrant a maintenance award. 2004 VT 83, ¶ 10, 177 Vt. 502, 857 A.2d 798 (mem.).
¶ 16. The superior court's principal statutory charge with respect to the marital estate is to divide and distribute the parties' property "equitably" and, if necessary, to award maintenance or property in lieu of maintenance "as the court deems just." 15 V.S.A. §§ 751(a), 752(b) ; see Victor v. Victor, 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982) ("[T]he distribution of property is not an exact science and does not always lend itself to a precise mathematical formula; all that is required is that such distribution be equitable."). "On appeal, the party claiming error in a property and maintenance award must show that no reasonable basis exists to support the award." Jenike, 2004 VT 83, ¶ 8, 177 Vt. 502, 857 A.2d 798.
¶ 17. Here, the superior court made extensive findings of fact before first considering the property distribution in its conclusions of law. After separately addressing each of the statutory factors set forth in § 751(b), the court concluded *860 that: (1) husband "brought substantially more assets into the marriage, is very employable and more likely to be able to obtain or maintain employment at a level consistent with the parties' lifestyle during the marriage"; (2) although wife's "contributions to the household were significant," husband's "contribution to the marital estate by reentering the workforce contributed to a greater part of the maintenance and/or increase in the value of the marital estate"; and (3) because wife "had not been gainfully employed" during much of the parties' relationship, she had a greater need than husband for property in the form of liquid assets. Based on these considerations, the court awarded the marital home, valued at $2.715 million, to husband and required him to pay wife $1.1625 million as her share of the real property. The court also divided other assets of the marital estate, including bank and investment accounts, vehicles, and miscellaneous personal property, as well as the parties' personal loans and debts. This property distribution allocated to wife approximately forty percent of a marital estate that the court valued at roughly $5.2 million.
¶ 18. "In addition to the above-discussed distribution of assets and debts," the superior court ordered husband to transfer to wife $970,000 representing "a combination of an equitable property distribution and above and beyond that distribution as property in lieu of spousal maintenance." In support of its award of additional property in lieu of maintenance, the court reviewed the conditions and factors set forth in § 752, stating that "a large portion" of the $970,000 was needed to assure that wife did not have to spend down her share of the property distribution to purchase a new home, buy furnishings, obtain health insurance, and purchase other necessities. The court further stated that it was "unnecessary to establish a mathematical number on [the parties'] standard of living," but that an award of additional property in lieu of maintenance was necessary for wife to support herself near the standard of living enjoyed during the marriage, given her level of education and work history. The court concluded that the property distribution, "particularly the cash transfer of $970,000, is an equitable resolution of [wife's] request for maintenance."
¶ 19. In his motion to amend, husband, among other things, asked the court to make additional findings to clarify how it arrived at the $970,000 figure. Ironically, in light of her later position on appeal, wife opposed this request, arguing that "the court's findings are sufficient to establish the court's reasoning for the award it made." Wife surmised that "the only reason" husband was seeking detailed findings on the award was "so that he can challenge the precise calculation on appeal," which wife argued would be unsupportable, considering that "neither property division nor the award of spousal maintenance is an exact science."
¶ 20. The superior court denied husband's request for further findings on the maintenance award, stating "that the figure was equitable given the property distribution and its discussion of the § 752 factors." The court also indicated it intended the figure to include, in addition to property in lieu of maintenance, a cash offset for a bank account awarded to husband containing deferred compensation.
¶ 21. To the extent wife is arguing that the superior court made insufficient findings to support its $970,000 award in lieu of maintenance, that argument is waived under the invited error doctrine. See State v. Longe, 170 Vt. 35, 39 n.*, 743 A.2d 569, 572 n.* (1999) ("The invited error doctrine, which applies in both civil and criminal *861 cases, is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside." (quotation omitted)).
¶ 22. To be sure, the court could have been more specific in explaining how it arrived at the $970,000 figure and what portion of that figure represented the maintenance award. But when property is awarded in lieu of maintenance, the ultimate issue is whether, considering the factors in both § 751 and § 752, the property distribution is sufficient to provide the recipient spouse with property representing both an equitable share of the marital property as well as additional property equivalent to a just maintenance award. Wife has failed to demonstrate that the court's property distribution, including its award of property in lieu of maintenance, was inequitable or unjust, given the facts and circumstances of this case. The court's findings and conclusions demonstrate that it was well aware of husband's then-current income and prospects, as well as wife's limited income and her desire to enroll in a two-year physician's assistant program the following fall. Again, the court could have better explained how its award of additional property in lieu of maintenance ensured that wife would be able to meet her reasonable needs in light of the standard of living established during the marriage. But the record leaves little doubt that that is the case here, considering the substantial marital estate apportioned to wife and the duration of the marriage, among other statutory factors.
¶ 23. Wife's reliance on Jenike is unavailing. In that case, the wife argued that "the questions of property distribution and maintenance are so intertwined that once fault is alleged and proved under § 751, there is no way for the court not to consider fault in crafting a maintenance award," even though fault is not one of the factors for determining the amount and duration of a maintenance award. 2004 VT 83, ¶ 10, 177 Vt. 502, 857 A.2d 798. We rejected this argument, noting that the "connection [between the two statues] arises from the language of § 752(a), which requires the family court to consider the property awarded under § 751 when determining whether the spouse seeking maintenance has sufficient property or income to meet his or her reasonable needs following divorce." Id. In the context of the wife's argument, we noted that the maintenance statute contemplated devising an equitable property settlement before considering a maintenance award and that the two must not be confused because "the considerations justifying a property settlement are different from those grounding maintenance awards." Id. In this case, the court initially distributed the parties' marital property upon consideration of the factors set forth in § 751(b) and then allocated to wife more property in the form of a lump-sum cash award in lieu of maintenance after considering the statutory conditions and factors set forth in § 752. The court's award does not run afoul of Jenike.
III.
¶ 24. Next, we consider wife's challenge to the superior court's distribution of husband's compensation in the form of deferred stock and cash. In its final divorce order, the superior court found that: (1) husband began working at Citibank in June 2013; (2) in addition to his base salary and a sign-on bonus, he received deferred stock having "a pre-tax nominal value of $300,000 that would vest and be distributed at a rate of 25% per year over four years beginning on his first anniversary date of his employment"; (3) "[h]e received a 'replacement cash in lieu of equity'
*862 award in the amount of $98,824 for forfeiting or cancelling his equity in his prior employer"; and (4) he received stock "in the form of a Replacement Equity Award with a pre-tax nominal value of $405,697, with $23,253 vesting on September 20, 2013, $104,331 vesting and to be distributed on September 20 in 2014, 2015, and 2016, and $69,451 vesting and to be distributed on September 20, 2017."
¶ 25. The court found the distribution of the deferred stock and cash to be a "significant matter in dispute," with husband arguing that the deferred stocks and cash should be considered income when they vested rather than current assets because they fluctuated from year to year and were conditional and discretionary in nature. The court recognized "that it is not a foregone conclusion that [husband] will receive the entirety of that compensation," but found "the likelihood of [husband] not receiving the compensation for the time he worked at Citi before the separation (June 2013-February 2014) to be remote." Thus, the court determined "that the deferred cash and stock awards made regarding this time period are assets of the marriage subject to distribution." In so finding, the court cited our decision in Golden v. Cooper-Ellis, wherein we stated that deferred stock options representing compensation for past or present performance must be considered marital property even if vesting occurs after the divorce. 2007 VT 15, ¶ 20, 181 Vt. 359, 924 A.2d 19.
¶ 26. Based on these considerations, the superior court found that the value of husband's total compensation for 2013 was $1,798,521, which included his base salary, his sign-on bonus, the replacement-cash-in-lieu-of-equity award, as well as the stock valued at $300,000 and $405,697 to be paid over a four-year period. For 2014, the court found that husband received deferred stock worth $260,000 to be paid in equal installments over four years, deferred cash worth $280,000, and a cash bonus of $1,040,000. The court stated that it would "consider[ ] 40/365 of this [2014] compensation, representing the amount attributable to the pre-separation time period in 2014," which amounted to $216,986.
¶ 27. In her motion to amend, wife argued, in relevant part, that the superior court failed to distribute the deferred stock and cash that it had concluded were marital assets. Relying on an exhibit submitted by husband, wife asserted that the value of the total remaining stock award expected to vest between 2015 and 2019 was $1,128,741, and the total remaining deferred cash award expected to vest between 2016 and 2019 was $688,820, for a grand total of $1,817,561. For his part, husband asked the court to make additional findings on how it determined the value of the 2013 and 2014 deferred stock and cash, to clarify whether it was income or assets, and, if assets, to clarify that he was awarded the pre-separation component of those assets as part of the court's equitable property distribution. Husband also asked the court to clarify that the 2014 deferred compensation attributable to the post-separation time period was not part of the marital estate. Further, husband pointed out that, pursuant to the court's temporary order, Citibank account xxx2471 included all of the 2014 deferred compensation and cash bonuses received during the pendency of the divorce. Husband asked the court to clarify that a large portion of the approximately $750,000 in that account was attributable to the post-separation period and thus not subject to an equitable property distribution but rather awarded to him.
¶ 28. In response to the parties' motions to amend, the superior court attempted to explain what it had decided with respect to the deferred compensation. The court stated *863 that: (1) it had explicitly found "that the deferred stock and deferred cash received as compensation for [husband's] employment between June 2013 and February 2014 was a marital property 'asset' and subject to distribution"; (2) "[i]mplicit in this finding was the fact that any compensation earned after the February 9, 2014 separation was not marital property, belonged to [husband] entirely, and would not be subject to distribution"; (3) it "implicitly took the deferred compensation into account when it came to the conclusion that awarding [wife] $970,000 in cash, in addition to the personal property and real estate awards, was appropriate as a combination of both a portion of the funds in Joint Citi Investment Account (xxx2471) and as property in lieu of spousal maintenance"; (4) in awarding husband that account, it was explicitly awarding husband "the already vested and distributed portion of the deferred compensation remaining in the account, which was proper as it was not a marital asset"; (5) in doing so, it "had meant to imply that [husband] was awarded the remainder of his deferred compensation and that it had taken this into account when it established the $970,000 figure" for awarding additional property in lieu of maintenance; (6) "to the extent that this was unclear," it would award husband "the remaining unvested deferred compensation, including the deferred stock shares and deferred cash award" listed in its findings; (7) "any deferred compensation acquired after February 9, 2014 [the date of separation], which the court calculates for 2014 as the compensation multiplied by 325/365, are not marital assets subject to distribution and are [husband's] property, but will be considered in the property in lieu of spousal maintenance analysis"; (8) husband is awarded the entire amount of Citibank account xxx2471 valued as of March 2015 (the first day of the final divorce hearing), but "the portion of the account funds attributable to [husband's] post-separation deferred compensation and/or other income is not a marital asset subject to distribution in the property award section, although it has been considered for the property in lieu of maintenance analysis."
¶ 29. On appeal, wife argues that the superior court erred by not treating husband's deferred stock and cash as a marital asset subject to distribution and by examining the deferred stock and cash only as of the date of separation. Regarding the former argument, wife asserts that the court acted inconsistently and contrary to 15 V.S.A. § 751(a) by finding that the deferred stock and cash earned before the parties' date of separation were marital assets, but then treating as marital assets only the deferred stock and cash that vested before the date of separation. Regarding the latter argument, wife asserts that this Court has rejected any approach that treats assets acquired after separation as nonmarital property.
¶ 30. Upon review of the record, we are compelled to remand the property distribution to the superior court for further consideration and findings. First and foremost, the court's decisions confuse what property is to be included in the marital estate with how to allocate that property. In its decision on the parties' motions to amend, the court at times seemed to suggest that it considered all of husband's deferred compensation earned in 2013 and 2014 to be a marital asset subject to distribution and that it was awarding all the remaining unvested deferred compensation to husband. On the other hand, the court repeatedly stated that any of the deferred compensation acquired after the date of the parties' separation is not a marital asset subject to distribution between the parties.
*864 ¶ 31. That is contrary to our law. "All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court." 15 V.S.A. § 751(a) ; see Golden, 2007 VT 15, ¶ 10, 181 Vt. 359, 924 A.2d 19 (stating that court's jurisdiction does not extend "only to property owned as of the date the parties separated" and concluding that family court did not err "in considering stock options received by husband after the date of separation and including them in the estate for division"). To the extent that husband's deferred compensation was earned for services rendered during the marriage but had not yet vested, it is a marital asset subject to distribution within the court's discretion based on all relevant statutory factors, including the extent to which each party contributed to its acquisition. Cf. Golden, 2007 VT 15, ¶ 20, 181 Vt. 359, 924 A.2d 19 (stating that, most commonly, "some part of [stock] options represent deferred compensation for past or present performance, even though vesting occurs in the future," and concluding that that part "must be considered marital property even though vesting occurs in the future"). Thus, the court must consider for distribution all property owned by the parties-including husband's deferred compensation earned during the marriage-and value that property as closely as possible to the date of the final divorce hearing. See id. ¶ 10 ("Assets are normally valued for distribution as of the day of the final divorce hearing, regardless of whether they were acquired during or after the parties separated."); Hayden v. Hayden, 2003 VT 97, ¶ 8, 176 Vt. 52, 838 A.2d 59 ("Assets are valued for distribution purposes as of the date of the final hearing, regardless of whether acquired before or after the marriage.").
¶ 32. How the court allocates the marital property is an entirely different matter, however. The superior court has broad discretion to equitably allocate marital property based on all relevant factors, including which party acquired a particular asset and the extent to which each party contributed to its acquisition. 15 V.S.A. § 751(b)(10), (11). In allocating certain assets, the court may find relevant the date of the parties' separation if one party did not contribute to the other party's acquisition of those assets after that date. Cf. Russell v. Russell, 157 Vt. 295, 305, 597 A.2d 798, 804 (1991) (concluding that using date of separation as numerator for coverture fraction to determine what portion of pension benefits were acquired during marriage "is most reflective of the functional end of marriage and will be a relatively easy benchmark to determine").[1]
*865 The court may also construe the likelihood that the earned deferred compensation will not in fact vest.
¶ 33. In this case, we cannot be sure from the superior court's inconsistent statements what was decided and why. See Turner v. Turner, 2004 VT 5, ¶ 7, 176 Vt. 588, 844 A.2d 764 (mem.) ("The trial court has broad discretion to consider the statutory factors and fashion an appropriate order, but it must provide a clear statement as to what was decided and why."); Richard v. Richard, 146 Vt. 286, 287, 501 A.2d 1190, 1190-91 (1985) ("The purpose of findings is to provide a clear statement as to what was decided and why; where no indication appears of the method employed and weight accorded various factors, remand is necessary."); see also Hayden, 2003 VT 97, ¶ 9, 176 Vt. 52, 838 A.2d 59 ("Ample precedent establishes the trial court's authority to restore property to the partner who brought the property to the marriage. The trial court is still, however, required to consider the property as part of the marital estate and to explain the basis for its disposition ...." (citations omitted)). Specifically, we cannot be sure that the court believed it had the discretion to distribute all of husband's deferred compensation earned during the marriage, including for the period after the parties separated, even if it had not vested at the time of the divorce. Cf. Hayden, 2003 VT 97, ¶ 15, 176 Vt. 52, 838 A.2d 59 (stating that family court must explain why it is "awarding funds placed in a retirement account before the marriage and following separation to the employee spouse rather than dividing these funds equally").
¶ 34. Wife argues that the superior court erred by not treating as marital assets husband's deferred compensation earned after the parties separated and by not distributing husband's deferred compensation earned but not yet vested before they separated. Because it is not clear from the record whether the court treated all of husband's deferred compensation earned during the marriage as marital property subject to distribution, we remand the case for the court to reconsider and make specific findings on its allocation of husband's deferred compensation earned during their marriage.
¶ 35. On remand, the superior court must identify and value any deferred compensation earned by husband during the marriage, including after the date of separation, apportion it in an equitable manner, and explain the basis for the apportionment. For purposes of determining what is marital property, the court must focus on when the deferred compensation was earned, rather than when it will vest. But as long as it was earned during the marriage for present or past services, it must be considered part of the marital estate subject to distribution even if it is unvested. Cf. Golden, 2007 VT 15, ¶ 23, 181 Vt. 359, 924 A.2d 19 (explaining that stock options should be excluded from marital property only if they are "awarded as compensation for future services, and only if the nonemployee spouse's contribution to acquiring those options is not a factor"). In allocating husband's deferred compensation, the court may consider the functional end date of the marriage with respect to when wife stopped contributing to his acquisition of those assets. It may also take into account the conditions precedent to the deferred compensation vesting, the likelihood that husband will in fact receive *866 the compensation, and the impact of these considerations on the present value of the deferred compensation. Irrespective of its allocation, however, the deferred compensation should be assigned its value as closely as possible to the time of the final divorce hearing.[2] The court need not take any new evidence, but if its allocation of deferred compensation on remand changes its property distribution, it may also reconsider its award of additional property in lieu of maintenance. See Cook v. Coburn, 2014 VT 45, ¶ 10, 196 Vt. 410, 97 A.3d 892.
IV.
¶ 36. Wife also argues that the superior court acted inconsistently by "find[ing] that it is inappropriate in this case to consider either party's legal and expert fees as part of the marital liabilities/debt," but then allocating to husband $125,000 in debts that the record demonstrates were for legal fees and expenses. She contends that the mistaken allocation of debt to husband could have impacted the court's overall distribution of marital assets. Husband responds that any inconsistency was harmless because the court allocated all of husband's debts to husband and all of wife's debts to wife. We remand the matter for the court to address this inconsistency.
¶ 37. Finally, wife argues that the court made a mathematical error in valuing the marital assets at $5,743,221 rather than $5,632,221. This also can be addressed on remand.
The decree of divorce is affirmed. The matter is reversed and remanded for the superior court to make additional findings as required by this opinion and to reconsider the property distribution, in particular its distribution of husband's deferred compensation and, if necessary, its award of additional property in lieu of maintenance.
TEACHOUT, Supr. J., Specially Assigned, dissenting.
¶ 38. I am unable to find a deficiency in the decision that necessitates remand for additional findings. While it is true that there is language stating that some items are "not marital property" or "not subject to distribution," more telling is what the findings and conclusions actually show. The trial judge specifically identified all financial interests of the parties during the marriage and expected to be received afterwards, including cash income, bonuses, deferred stock (with their vesting and payment schedules), replacement cash, and deferred cash as well as traditional assets such as real and personal property. He identified when each item was received in relation to relevant dates (pre-separation mingling of funds, post-separation use of funds under the temporary order, and the final hearing date). He identified the value of each item according to the value evidence presented by the parties. He identified all financial interests as of the first final hearing date, and he allocated all interests on the basis of statutory criteria and reasons stated. He was mindful of the character of each item and when it would be received by whom, whether before or after the hearing date. He exercised jurisdiction over all items and accounted for them by first equitably dividing property interests and then addressing post-divorce maintenance, finally determining to award *867 additional property in lieu of maintenance for reasons stated.
¶ 39. Based on the description in the findings of the deferred stock as "golden handcuffs" compelling husband to continue working for a period of at least four years that included a period after separation and would include a period after divorce, it is easily apparent that the trial judge treated husband's deferred compensation and cash as employment compensation, analyzing post-divorce receipt of deferred compensation as future compensation attributable to future work, whereas the sums received prior to the final hearing had either been spent (including partly for temporary spousal support) or become integrated into the assets that were in fact identified and allocated as property. He took this into account both in considering it as one of the factors related to property division and as one of the factors related to spousal maintenance. He did not exclude any form of financial interest from the overall financial universe of the parties, despite the use of some phrases that suggested otherwise. Under these circumstances, the use of phrases such as "not marital assets" would seem to be harmless error. I would affirm the decision.

In McDermott v. McDermott, we examined methods for distributing pension benefits, including how to determine what portion of those benefits were acquired during the marriage. 150 Vt. 258, 260-61, 552 A.2d 786, 788-89 (1988). As we explained, the so-called "coverture fraction"-consisting of a numerator representing the number of years or months that the employee-spouse participated in the pension plan during the marriage and a denominator representing the total number of months or years that the employee will have participated in the plan at retirement-determines what portion of the entitlement was acquired during the marriage. Id. at 261, 552 A.2d at 789. We recognize that the instant case does not concern pension benefits, but McDermott and its progeny further support the notion that the superior court has flexibility in determining how to allocate marital assets based on when they were acquired and who contributed to their acquisition. See Hayden, 2003 VT 97, ¶ 13, 176 Vt. 52, 838 A.2d 59 (stating that "Russell does not establish a hard and fast rule regarding the date on which a coverture fraction should be based," but rather sets forth "the principles that should guide a court's decision," most particularly that court consider period during which both parties contributed to growth of funds in question); see also Golden, 2007 VT 15, ¶ 12, 181 Vt. 359, 924 A.2d 19 (citing Hayden for same principle); cf. Camisa v. Camisa, 168 Vt. 563, 564, 714 A.2d 641, 642 (1998) (mem.) (concluding that family court did not err by using date of initial divorce order, rather than later order following remand from appeal, in determining coverture fraction for retirement benefits because it represented date most reflective of functional end of marriage).

To the extent that the court is distributing any unvested deferred compensation as an asset, it may consider the actual amount that husband will receive in determining its value, but only if that value is not overly speculative. Cf. Drumheller v. Drumheller, 2009 VT 23, ¶¶ 53-55, 185 Vt. 417, 972 A.2d 176 (stating that potential taxes on distributed marital assets should not be considered unless assets are subject to court-ordered sale and tax is not speculative).